**H. M. HARRINGTON, Jr. and Marguerite Harrington, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 25873.

United States Court of Appeals
Fifth Circuit.

Dec. 3, 1968.

H. M. Harrington, Jr., Longview, Tex., for petitioners.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harry Marselli, Marian Halley, Attys., Dept. of Justice, Washington, D. C., Lester R. Uretz, Chief Counsel, IRS, Washington, D. C., for respondent, Grant W. Wiprud, Atty., Dept. of Justice, Washington, D. C., on the brief.

Before BELL and SIMPSON, Circuit Judges, and ROBERTS, District Judge.

ROBERTS, District Judge:

Appellants appeal from the Tax Court's Opinion substantially affirming a ruling by the Internal Revenue Commissioner that appellants could not take a depletion allowance for the years 1959–61 on oil taken from slant-hole wells. The basis of the Commissioner's ruling was that appellants had no "economic interest" in oil pumped from a neighbor's lease through slanted wells. We affirm.

Appellants first challenge the Tax Court's ruling that they did not have the necessary "economic interest" in the oil pumped from wells drilled on their leases, but bottomed on neighboring leases, to qualify for a depletion allowance. Appellants contend that they had an economic interest sufficient to support their taking a depletion allowance because their leases were over a common pool of oil. Hence, appellants' theory of economic interest requires that depletion be computed on the basis of the amount of oil removed from the pool without re-

gard to whether the well is bottomed legally or illegally.

Although appellants have an interest in the common pool of oil lying beneath their tracts, Harrington v. Railroad Comm'r, Tex.1964, 375 S.W.2d 892, they do not have the economic interest required for depletion purposes in the oil pumped illegally from their neighbors' tracts. To qualify for the depletion allowance, a taxpayer must have "acquired, by investment, any interest in the oil in place," and secured, "by any form of legal relationship, income derived from the extraction of the oil, to which he might look for a return of his capital." Palmer v. Bender, 1933, 287 U.S. 551, 557, 53 S.Ct. 225, 226, 77 L.Ed. 489. Appellants do not have the required interest in the oil pumped from the slanted wells in order to take the depletion allowance because the income derived from the extraction of the oil was not "secured by any form of legal relationship." Rather, the income from the oil was derived from a tortious conversion of neighboring landowners' oil. Harrington v. Texaco, Inc., 5th Cir. 1964, 339 F.2d 814.

Moreover, a reading of the relevant Supreme Court decisions indicates that the Court has usually limited a taxpayer's depletable "economic interest" to oil extracted while in place beneath the taxpayer's property. See, e. g., Palmer v. Bender, supra; Burton-Sutton Oil Co. v. Commissioner of Internal Revenue, 1945, 328 U.S. 25, 66 S.Ct. 861, 90 L.Ed. 1062, 162 A.L.R. 827; Kirby Petroleum Co. v. Commissioner of Internal Revenue, 1945, 326 U.S. 599, 66 S.Ct. 409, 90 L.Ed. 343. One departure from this limitation occurred in Commissioner of Internal Revenue v. Southwest Expl. Co., 1956, 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347, a case heavily relied upon by appellants. Their reliance, however, is misplaced. In this unusual case, the taxpayers owned upland properties that were by state law essential sites for slant-drilling into offshore oil deposits. They contributed these sites to the operating company in consideration for a

share in production. The Court held that because the contribution of the sites was an investment in the offshore oil in place, the taxpayers were entitled to depletion on their share of production. In the instant case, however, appellants made no contribution to their neighbors' production of oil, and they were not legally entitled to share in the production of their neighbors' oil.

It is clear that the bridge built by appellants from their interest in the common pool to the oil depletion allowance is not supported by the weight of authority and crumbles from lack of merit.

Appellants' second point of error is that the Tax Court erred in not allowing depletion on well #2 on the Blackstone lease. The Blackstone lease supported two wells: #1–B, a deviated well, and #2, and undeviated well. Until both wells were ordered severed by the Railroad Commission in 1962, Blackstone #2 had an allowable of 187 barrels per day, one-half the total Blackstone lease allowable. A subsequent survey revealed that #2 was not deviated. Appellants sought depletion of this well, and the Tax Court ruled against them on the grounds that there was no evidence of production on this well. Appellants contend that during the years in question exactly one-half of the output of the lease came from #2. As proof of their position, appellants point to a report of the Railroad Commission made six months prior to the first year in question that shows #2 was producing. Appellants conclude that this report and the fact that #2 had an allowable of 187 barrels a day compel the conclusion that the Tax Court was clearly erroneous.

We disagree. The report of production by #2 a few months before the first year in question is no proof that the well was producing during the taxable period in dispute. Moreover, the fact that #2 had an allowable does not prove that there was any production. Appellants had the burden of proof on this issue and failed to satisfy the Tax Court

that one-half of the production from the Blackstone lease during the years in question came from #2.

Appellants' reliance on Estate of Donnell v. Commissioner, 1967, 48 T.C. 552, is misplaced. Appellants read this case as allocating production to the straight wells on the basis of allowables. Hence, they conclude that here the Tax Court should have found that the deviated well and the straight well split the production from the lease since each had the same allowable. This position is unreasonable because in *Donnell* it was stipulated that the straight wells had yielded 53.48 per cent of the total production; whereas in our case, there is no proof that the straight well was producing during the years in question.

Appellants' next argument for reversing the Tax Court is that the Court abused its discretion in admitting into evidence surveys by Sperry-Sun Co. showing that appellants' wells were slanted and bottomed on neighboring tracts. The basis of the appellants' argument is that the surveys should not have been admitted because the instrument's operator, Crowder, had died before the trial and because there was no evidence on how he performed the surveys or on whether the instrument was operating properly. This no-evidence contention is without merit.

■ Much evidence was introduced to show that the surveys were performed correctly and that the instrument used by Crowder was functioning properly. Crowder had standing instructions to check his equipment before making a survey and to exercise every caution while making a survey. Crowder's supervisor, who was present during much of the surveying of appellants' wells, testified that Crowder was very competent and had used Sperry-Sun procedures, which were in accordance with sound engineering principles. Appellants contend that the Tax Court failed to follow Wigmore's rules applied in Harrington v. Texaco, Inc., supra, 339 F.2d at 818, for the admission of evidence obtained by scientific instruments. See also Wigmore, The Science of Judicial Proof 450. The first Wigmore rule is that the instrument "be accepted as dependable for the proposed purpose by the profession concerned * * *" The Tax Court noted that the instrument used in these surveys was recognized as reliable by engineers in the field. The second rule is that the instrument must be properly built and "in good condition for accurate work." There was sufficient evidence here that the instrument was in proper working order. The third Wigmore rule is that the "witness using the apparatus * * * must be one qualified for its use by training and experience." Crowder unquestionably met these requirements.

■ Moreover, there are other sound reasons for upholding the Tax Court's decision to admit this evidence. First, this evidence falls within the business-record exception to the hearsay rule because these surveys were recorded and kept in the regular course of business by the Sperry-Sun Company.

■ Second, Rule 43(a) of the Federal Rules of Civil Procedure was correctly interpreted by the Tax Court to be applied in favor of the admission of evidence rather than the exclusion of evidence. 26 U.S.C. § 7453 requires Tax Court proceedings to be "in accordance with rules of evidence applicable in trials without a jury in the United States District Court of the District of Columbia." Rule 43(a) of the Rules of Civil Procedure provides "All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held."

Since the District of Columbia is not a state, its evidence rules are not affected by state law. Therefore, the rule in the District of Columbia must rest on the remainder of 43(a) which favors admissibility.

Third, these evidence questions have been substantially litigated before by this Court in Harrington v. Texaco, Inc., supra. The only difference is that here the operator is dead and unable to testify to the working condition of the instrument. Finally, admission of evidence is largely within the discretion of the trial court. Moore v. Louisville & Nashville RR Co., 5th Cir. 1955, 223 F.2d 214. The Tax Court did not abuse its discretion here.

The Tax Court's decision is affirmed.