FRANK HUDOCK AND MARY HUDOCK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7417-73. Filed November 19, 1975.

---

*Robert P. Hudock* and *Philip F. Hudock,* for the petitioners.
*Gerald V. May, Jr.,* for the respondent.

OPINION

DRENNEN, *Judge:* Respondent determined a deficiency of $1,364.35 in the joint Federal individual income tax of petitioners Frank Hudock and Mary Hudock for the taxable year ended December 31, 1969. The issues presented are:

(1) Whether petitioners realized a gain or loss upon receipt in 1969 of an estimated condemnation award for real estate and improvements thereon. A subsidiary but related question is whether petitioners may deduct in 1969 a loss on an apartment building on the land condemned which was destroyed by fire before the condemnation. A claim for insurance on the fire loss was not settled until 1971.

(2) Whether petitioners properly allocated the condemnation award between the rental and personal portions of the property remaining after the fire; and

(3) Whether, by virtue of either section 7121, I.R.C. 1954,[1] or the application of the doctrine of equitable estoppel, the Commissioner is barred from assessing a deficiency in respect of the taxable year 1969.

This case was submitted fully stipulated under Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts with the exhibits attached are incorporated herein by this reference. The pertinent facts are as follows:

Frank and Mary Hudock (hereinafter jointly referred to as petitioners) are husband and wife who, at the time of filing their joint Federal individual income tax return for 1969 and the petition herein, resided in Hazleton, Pa. Their return was prepared on the cash receipts and disbursements method of accounting and filed with the District Director, Internal Revenue Service, Philadelphia, Pa.

In 1968 petitioners owned a lot approximately 30 feet by 190 feet located at the corner of Wyoming and Walnut Streets in Hazleton, Pa., which was improved by the following structures: A four-unit apartment house of which one unit was used by petitioners as their residence and the remainder was rented; a

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect in the years involved, unless otherwise specified.

double home used as rental property; and a multiple-car garage used as rental property.

The apartment house was destroyed by fire on February 14, 1968, at which time the property was insured by petitioners for a total amount of $50,000.[2] On October 4, 1968, a Declaration of Taking was filed by the Redevelopment Authority of the City of Hazleton (hereinafter referred to as the Redevelopment Authority) condemning petitioners' land and structures.

In 1968, litigation was instituted by petitioners against the insurance companies and the Redevelopment Authority, relating to claims for the fire loss and the condemnation, respectively. Neither the fire loss nor the condemnation was reflected in petitioners' income tax return for 1968 as no payment in respect of either the fire claim or the condemnation claim was received by petitioners in 1968.

The Redevelopment Authority took physical possession of the condemned property in mid-1969, at which time petitioners received $20,000 as estimated compensation therefor. Petitioners continued to litigate the condemnation claim against the Redevelopment Authority until 1972, in which year they received an additional $15,000 in full and final settlement of said claim.

As to the fire loss claim against the insurance companies, petitioners continued that litigation throughout 1969 and 1970 during which period they received no payments in respect thereof. In 1971, petitioners received $48,000 from the insurance companies in full settlement of the fire claim.

On their return for 1969, petitioners reflected receipt of the $20,000 condemnation payment awarded in 1969 by claiming a Schedule D loss, part III, "Property Other Than Capital Assets,"

---

[2]

| Insurance company | Amount of coverage |
|---|---|
| Donegal Mutual Insurance Co. Marietta, Pa. | $26,000 |
| Northern Insurance Co. New York, N. Y. | 10,000 |
| Pennsylvania Insurance Co. Philadelphia, Pa. | 10,000 |
| Ohio Farmers Insurance Co. Le Roy, Ohio | 4,000 |
| Total | 50,000 |

in the amount of $1,917.78. Petitioners also deducted in the 1969 return rental expenses of $4,262.90 which were in fact condemnation expenses related to the aforementioned award.

Petitioners computed the $1,917.78 claimed condemnation loss as follows:

|  | Rental | Personal | Total |
|---|---|---|---|
| Adjusted basis before casualty of 4-unit apartment building ___ | $17,786.27 | $15,000 | $32,786.27 |
| (Decrease by estimated insurance recovery) ___ | (13,500.00) | (11,500) | (25,000.00) |
| Unrecovered basis___ | 4,286.27 | 3,500 | 7,786.27 |
| Basis of land and other improvements less depreciation ___ | 13,131.51 | 1,000 | 14,131.51 |
| Total ___ | 17,417.78 | 4,500 | 21,917.78 |
| (Condemnation award received) ___ | (16,000.00) | (4,000) | (20,000.00) |
| Condemnation loss ___ | 1,417.78 | 500 | 1,917.78 |

Petitioners in computing their taxable year 1969 condemnation loss in the above computation estimated insurance recovery of $25,000 on the fire loss claim which was still in litigation, and reduced the adjusted basis of the four-unit apartment building by the estimated insurance recovery. The unrecovered basis in the four-unit apartment building reflected in the computation represented a loss in the taxable year 1969. Petitioners assumed that they were entitled to reflect a reasonable amount of insurance recovery to so determine the loss.[3]

Thereafter, on April 5, 1972, incident to an audit of petitioners' 1969 return, petitioners and an agent of respondent executed Form 4549, captioned "Income Tax Audit Changes," which reflected the following adjustments: Disallowance of the $4,262.90 deduction claimed for rental expenses and recharacterization of said amount as expenses incurred in connection with securing the reported condemnation award; an increase in the amount of loss claimed ($1,917.78) which resulted from the application of the $4,262.90 condemnation expenses to the recomputation of the condemnation loss;[4] and a disallowance of the condemnation loss to the extent allocable to

---

[3] This is as stipulated. As will appear later we do not agree that recognizable fire loss on the apartment building occurred in 1969.

[4] That is, the $20,000 award was effectively reduced by the $4,262.90 of expenses to arrive at a net condemnation award of $15,737.10.

the personal portion of the property. The net effect of these adjustments was to produce an additional liability in respect of petitioners' income tax for 1969 in the amount of $210.06 (plus interest). On April 5, 1972, petitioners paid to respondent by check the sum of $216.36 which represented $210.06 tax liability and $6.30 interest. Respondent cashed said check on April 7, 1972, and credited it to petitioners' account.[5]

In signing the Form 4549 agreement and paying the $216.36, petitioners believed they were signing a closing agreement which would terminate their tax liability. Form 4549, after providing that the subscribing taxpayer consents—

to either (1) the immediate assessment and collection of the deficiency shown on line 14, plus any interest due on this tax, and also any penalties shown on line 15 or (2) the overassessment shown on line 14, plus any interest and adjusted by any penalties shown on line 15.

specifically states that "It is understood that this report is subject to acceptance by the District Director." The Form 4549 herein was never "accepted" by the District Director of respondent although, as indicated above, the $216.36 payment was accepted.

On July 10, 1973, respondent mailed to petitioners a statutory notice of the $1,364.35 deficiency in their income tax for 1969 at issue herein. Respondent's determination was based on the disallowance of (1) the claimed condemnation loss and (2) associated rental expenses on the grounds that, as to the former, no deductible loss was incurred during 1969 and that, in respect of the latter, the claimed rental expenses were, in fact, condemnation expenses applicable to the reduction of the condemnation award.

In the context of the specific computation of the gain or loss resulting from the condemnation award, respondent's position is that there is no loss in 1969 attributable to the apartment building since any loss would be covered by insurance; therefore, respondent takes exception to petitioners' estimated insurance recovery in 1969. Moreover, in opposition to petitioners' allocation of 80 percent of the condemnation award to the rental portion and 20 percent to the personal, respondent allocates the award 93 percent to the rental portion and 7 percent to the personal portion. Accordingly, respondent's computation of gain

---

[5] Accordingly, the parties have stipulated that if the determination of respondent is sustained, petitioners' additional tax liability is $1,364.35 less $210.06, or a net liability of $1,154.29 plus interest.

and resulting adjustment in respect of the 1969 condemnation award is as follows:

|  | Rental | Personal | Total |
|---|---|---|---|
| Adjusted basis before casualty of 4-unit apartment building ___ | $17,786.27 | $15,000 | $32,786.27 |
| (Decrease by estimated insurance recovery)[6] _____ | (17,786.27) | (15,000) | (32,786.27) |
| Unrecovered costs_____ | --- | --- | --- |
| Basis of land and other improvements less depreciation _____ | 13,131.52 | 1,000 | 14,131.52 |
| Percent of the total_____ | 93% | 7% | 100% |
| Condemnation award _____ | 18,600.00 | 1,400 | 20,000.00 |
| (Condemnation expenses) _____ | (3,968.90) | (294) | (4,262.90) |
| Net condemnation award_____ | 14,631.10 | 1,106 | 15,737.10 |
| (Less: Adjusted basis) _____ | (13,131.52) | (1,000) | (14,131.52) |
| Gain as determined_____ | 1,499.58 | 106 | 1,605.58 |
| (Less: Sec. 1202 deduction) _____ | (749.79) | (53) | (802.79) |
| Net capital gain _____ | 749.79 | 53 | 802.79 |
| Add: Loss reported per return _____ | 1,417.78 | 500 | 1,917.78 |
| Adjustment _____ | 2,167.57 | 553 | 2,720.57 |

The principal issue in this case is whether petitioners realized a recognizable loss on receipt of the estimated condemnation award in 1969, or in fact realized a gain as determined by respondent. The issue is complicated by a somewhat unusual set of circumstances. One of the improvements on the property, a four-unit apartment building, one unit of which was occupied by petitioners as their home and the others being rented, was destroyed by fire February 14, 1968, and litigation was commenced to recover fire insurance for the loss on the building. Nothing was received on the insurance claim until the litigation was settled in 1971, for an amount in excess of petitioners' basis in the building. On October 4, 1968, the entire property was condemned by the Redevelopment Authority, and physical possession of the property was taken in 1969, at which time a

---

[6] As stipulated by the parties, presumably in order to translate respondent's legal position into mathematical terms, respondent estimated the insurance proceeds to be received on the apartment building to be equal to the adjusted basis of that property in 1969.

payment of $20,000 as estimated compensation for the property was made to petitioners. Litigation was also instituted by petitioners against the Redevelopment Authority for additional compensation which resulted in an additional award to petitioners in 1972. The $20,000 award received by petitioners in 1969 less the condemnation expenses, exceeded petitioners' basis in the land and other improvements, but not their combined basis in the land, other improvements, and the building that was destroyed by fire.

Ordinarily, as a practical matter, the issue of whether gain or loss shall be recognized in a particular year is different with respect to the destruction of property covered by insurance and the taking of property by condemnation. With regard to condemnations, gain or loss must be computed and gain, at least, must be recognized at the time an estimated award is received by the owner of the property condemned if the net amount of the partial award exceeds the owner's adjusted basis in the property condemned, even though litigation to obtain additional compensation is still pending. See *Conlorez Corp.*, 51 T.C. 467 (1968). On the other hand, partial settlements are seldom received on insurance claims and gain or loss of property damaged or destroyed by casualty which is covered by insurance is not normally recognized until it can be ascertained with reasonable certainty whether the casualty loss will be fully compensated by insurance, which is usually when the claim for insurance is terminated by adjudication, settlement, or abandonment of the claim. Sec. 1.165-1(d)(2)(i), Income Tax Regs.

Here the partial condemnation award was received by petitioners in 1969 with no strings attached so it is necessary to determine whether that payment resulted in a gain or loss recognizable in 1969. In this case that depends on whether any part of petitioners' adjusted basis in the destroyed building should be used in making the computation, or whether petitioners' adjusted basis in the land and other improvements alone should be used. If the latter, as respondent contends, petitioners realized a recognizable gain in 1969. Respondent arrived at this result by estimating the fire insurance recovery to be equal to petitioners' adjusted basis in the destroyed building. Petitioners, on the other hand, estimated the fire insurance recovery to be less than their adjusted basis in the building, leaving them with an unrecovered basis in the building. When

that amount was added to the adjusted basis in the land and other improvements, it gave petitioners a total unrecovered basis in excess of the net condemnation award received in 1969, and thus produced a loss, which they claimed on their 1969 return.

The parties agree that petitioners' adjusted basis in the entire property should be bifurcated and allocated between the apartment building which was destroyed by fire, and the land and other improvements; and respondent accepted petitioners' allocation of basis. Since the apartment building was used for the production of income and presumably had been allocated a separate basis for purposes of depreciation, we agree that petitioners' basis in the entire property should be so bifurcated. It follows that a computation of petitioners' gain or loss as a result of the casualty must be based on petitioners' separate basis in the building. See sec. 1.165-7(b)(2), Income Tax Regs; *United States v. Koshland,* 208 F. 2d 636 (9th Cir. 1953); *Harper v. United States,* 396 F. 2d 223 (4th Cir. 1968); *Rosenthal v. Commissioner,* 416 F. 2d 491 (2d Cir. 1969). In *Koshland,* a hotel was destroyed by fire in 1946 and the property on which it had been located was sold later in the year 1946. The court held that the loss from the fire was limited to the adjusted basis of the hotel as a unit and that no loss could be allowed as against the land.

It also follows that petitioners' gain or loss as a result of the condemnation must be computed by reference to petitioners' basis in the land and other improvements alone. In other words, the apartment building and the remainder of the property must be treated as separate units, and the gain or loss resulting from the two events which dispossessed petitioners of their property, the fire and the condemnation, must likewise be computed separately. Since, as hereinafter discussed, petitioners' gain or loss as a result of the fire could not be determined until the fire insurance claim was settled in 1971, no part of petitioners' separate basis in the apartment building could be used to compute petitioners' gain or loss on the condemnation of the rest of the property when the partial award was received in 1969. This seems logical because when the condemnation was instituted the apartment building was nonexistent or had no value and no part of the compensation paid for the property would have been allocable to the building.[7] Thus the partial

[7] This was prior to amendment of the Pennsylvania condemnation law in 1973, Pa. Stat. Ann. tit. 26, sec. 1-602(c), as amended Sept. 27, 1973. As amended the law requires the

compensation received by petitioners from the Redevelopment Authority in 1969 was compensation for the land and other improvements taken, and the gain or loss realized therefrom must be computed from the adjusted basis of that property alone.

The main thrust of petitioners' argument on this issue is that their estimate of the amount of the insurance recovery was reasonable and should be accepted. Petitioners cite no authority for their right to estimate the insurance recovery in 1969 in an amount less than the adjusted basis of the building, and we have found none. Perhaps petitioners have misconceived the operation of section 165 in the instant situation in that they confuse the question of whether $25,000 was per se a reasonable estimate of the insurance recovery in view of the condition of the building before the fire and the insurance coverage with the question of whether the facts and circumstances existing as of the close of 1969 afforded a reasonable basis for ascertaining the amount recoverable and whether it will be recovered. It is the latter which is determinative of recognition under section 165. Sec. 1.165-1(d)(2)(i), Income Tax Regs.; *Commissioner v. Harwick,* 184 F.2d 835 (5th Cir. 1950); *Louis Gale,* 41 T.C. 269 (1963). In our view an estimate of the insurance recovery on the fire loss has nothing to do with the gain or loss realized on the condemnation award; whatever that estimate might be no gain or loss would be recognizable with respect to the adjusted basis of the apartment building in 1969 because the claim for fire insurance was still in litigation at the end of 1969. To recognize such a gain or loss in 1969 would be to anticipate the event which would ultimately determine the gain or loss, which is not permissible.

The primary requisite for recognition of a casualty loss is that the loss must be evidenced by closed and completed transactions and established by identifiable events. *United States v. White Dental Co.,* 274 U.S. 398 (1927); *Boehm v. Commissioner,* 326 U.S. 287 (1945); *Louis Gale, supra; Ramsay Scarlett & Co.,* 61 T.C. 795 (1974), affd. 521 F. 2d 786 (4th Cir. 1975); sec. 1.165-1, Income Tax Regs.[8] This requires a determination whether, in

---

condemning authority, where the property being condemned has been damaged by *flood,* to pay the precasualty fair market value for the property. See Rev. Rul. 74-206, 1974-1 C.B. 198.

[8] In pertinent part, the regulations provide:

Sec. 1.165-1 Losses. (a) *Allowance of deduction.* Section 165(a) provides that, in computing taxable income under section 63, any loss actually sustained during the taxable

1969, the fire loss possessed the requisite closed and completed, fixed character so as to warrant recognition, resolution of which question depends on whether, in 1969, it could be "ascertained with reasonable certainty" what insurance would be received. Sec. 1.165-1(d)(2)(i), Income Tax Regs.; *Commissioner v. Harwick, supra.* Where, as here, a casualty loss is not recognized in the year of actual occurrence because there exists at that time a reasonable prospect of recovery on a claim for reimbursement, it is either the settlement, adjudication, or abandonment of the claim which ordinarily constitutes the event sufficient to render the loss "sustained" within the meaning of section 165. *Allied Furriers Corp.,* 24 B.T.A. 457 (1931); *Rose Licht,* 37 B.T.A. 1096 (1938); *Commissioner v. Harwick, supra.* Since petitioners' insurance claim was not settled until 1971, we look to 1969 for any circumstances functionally equivalent to settlement, adjudication, or abandonment of the claim, and we find none.

The condemnation had no effect on the insurance claim, nor did the partial award received in 1969. We do not know whether the insurance litigation was occasioned by denial of liability by the insurance companies or a dispute as to the amount. In any

year and not made good by insurance or some other form of compensation shall be allowed as a deduction subject to any provision of the internal revenue laws which prohibits or limits the amount of the deduction. This deduction for losses sustained shall be taken in accordance with section 165 and the regulations thereunder. * * *

(b) *Nature of loss allowable.* To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and, except as otherwise provided in section 165(h) and §1.165-11, relating to disaster losses, actually sustained during the taxable year. Only a bona fide loss is allowable. Substance and not mere form shall govern in determining a deductible loss.
* * *

(d) *Year of deduction.* (1) A loss shall be allowed as a deduction under section 165(a) only for the taxable year in which the loss is sustained. For this purpose, a loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year. * * *

(2)(i) If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances. Whether or not such reimbursement will be received may be ascertained with reasonable certainty, for example, by a settlement of the claim, by an adjudication of the claim, or by an abandonment of the claim. When a taxpayer claims that the taxable year in which a loss is sustained is fixed by his abandonment of the claim for reimbursement, he must be able to produce objective evidence of his having abandoned the claim, such as the execution of a release.

event, while in 1969 petitioners had reasonable prospects of collecting insurance on the fire, they did not know until 1971 that they would collect all or any part thereof; or if they knew with reasonable certainty in 1969 that they would collect some insurance, they did not know the amount thereof. *Commissioner v. Harwick, supra.* The burden was on petitioners to show either that their prospect for recovery was no longer reasonable in 1969, or that recovery of a specified amount could reasonably be ascertained in 1969. *Louis Gale, supra.* This petitioners have failed to do. A reasonable estimate of the insurance recovery is not sufficient.

On the basis of the foregoing analysis and the record herein, we conclude that petitioners have not proven that they sustained a fire loss not compensated for by insurance in 1969. Absent recognition of the fire loss in 1969, no amount of the then unrecovered basis in the apartment building is properly included in the computation of the gain or loss from the receipt of the condemnation award; therefore, respondent correctly determined that a recognizable gain of $1,605.58 resulted from the condemnation in 1969.

We turn next to the allocation of the condemnation award between the rental and personal portions of petitioners' property in order to ascertain the respective amounts of gain attributable thereto.[9] Under the Pennsylvania eminent domain law the award was not allocated between parcels or portions of the property condemned.

Petitioners contend that the proper allocation is 80 percent to rental and 20 percent to personal, which percentages they used to compute the condemnation loss claimed on their 1969 return. Petitioners argue on brief that their allocation is based on the respective fair market values of the rental and personal portions, but the stipulation contains no evidence of the fair market values. We also note that in their original computation of the loss, petitioners allocated the condemnation award ($16,000 to rental and $4,000 to personal) in approximately the same ratio that the total basis used in the computation ($21,917.78) was allocated between rental ($17,417.78) and personal ($4,500), or 80 percent to rental and 20 percent to personal. Respondent also appears to have used the latter formula to allocate the award between rental

[9] This is of significance only because petitioners apparently reinvested a part of the award in subsequent years and claimed nonrecognition of gain.

and personal; i.e., on the same ratio as the total basis used in his computation was allocated between rental and personal, except that respondent's ratio turned out to be 93 percent to rental and 7 percent to personal. Since the parties appear to have used the same formula for allocation and we find respondent's computation to be correct, we favor respondent's allocation. In addition, petitioners had the burden of proving respondent's allocation was wrong, and they have failed to carry that burden. We approve respondent's allocation.

The final issue is whether respondent is barred from assessing the deficiency determined for 1969 either by virtue of section 7121 or on the theory of equitable estoppel.

Section 7121 authorizes the Secretary or his delegate to enter into an agreement in writing, referred to as "closing agreement," with any person relating to the tax liability of such person for any taxable period, and provides that if such agreement is approved by the Secretary or his delegate, such agreement shall be final and conclusive. Section 301.7121-1(d), Proced. & Admin. Regs., establishes the procedure to be used with respect to closing agreements, and provides that all closing agreements shall be executed on forms prescribed by the Internal Revenue Service. The form prescribed for closing agreements by the Internal Revenue Service is Form 906, the title of which indicates that it is a closing agreement. Sec. 601.202, Proced. & Admin. Regs. It is well established that the statutory procedure provides the exclusive method by which a closing agreement may be accorded finality. *McIlhenny v. Commissioner,* 39 F. 2d 356 (3d Cir. 1930), affg. 13 B.T.A. 288 (1928); [10]*H. M. Harrington, Jr.,* 48 T.C. 939 (1967), affd. 404 F. 2d 237 (5th Cir. 1968); *Estate of Ella T. Meyer,* 58 T.C. 69 (1972). As stated in *Knapp-Monarch Co. v. Commissioner,* 139 F. 2d 863, 864 (8th Cir. 1944): "The very fact that Congress has provided a way in which the Internal Revenue Department may bind itself, precludes the possibility of its being bound by some other procedure."

Petitioners contend that the Form 4549 executed on April 5, 1972, by petitioners and a revenue agent constitutes a closing agreement, and that the acceptance by respondent of petitioners' check for $216.36, representing the amount of additional tax

---

[10] Cited with approval in *Burnet v. Porter,* 283 U.S. 230 (1931).

computed on that form, plus interest, constitutes "acceptance" of the closing agreement by the Secretary as required by section 7121. The form executed by petitioners was not the form of closing agreement prescribed by the regulations and it clearly did not purport to be a closing agreement. The Form 4549 evidences only petitioners' consent to the immediate assessment and collection of the deficiency proposed therein, and it states that it is subject to acceptance by the District Director, which was not given in this case. Section 7121 "envisages an agreement knowingly entered into by both parties," *H. M. Harrington, Jr., supra* at 953, and Form 4549 does not constitute an agreement by the Secretary to anything, much less a final closing agreement. Petitioners' unilateral belief that they were entering into a "closing agreement" does not satisfy the statute; nor does respondent's acceptance of the check operate to prevent respondent from making an additional assessment within the period of limitations. See *Earle C. Parks,* 33 T.C. 298 (1959); *United States v. Hardy,* 299 F. 2d 600 (4th Cir. 1962); *Bowling v. United States,* 510 F. 2d 112 (5th Cir. 1975).

Neither can we agree with petitioners' alternative argument that the doctrine of equitable estoppel precludes the assessment and collection of the deficiency at issue herein.[11] Without going into all the elements that are essential to invoke the doctrine of equitable estoppel, we believe it is sufficient to note that one of the necessary elements is reliance by the party claiming estoppel on an action by the other party to the detriment of the claiming party. *Crossett Lumber Co. v. United States,* 87 F. 2d 930 (8th Cir. 1937); *Knapp-Monarch Co. v. Commissioner, supra.* And the claiming party must demonstrate that such reliance was justifiable or reasonable under the extant facts. See *James Couzens,* 11 B.T.A. 1040 (1928). We find that petitioners have failed to satisfy these standards in that the execution of the Form 4549 and the $216.36 payment pursuant thereto do not suffice to establish the requisite "substantial change of position to [their] detriment in reliance upon the government's conduct." *United States v. Saladoff,* 233 F. Supp. 255, 258 (E.D. Pa. 1964). Rather—

---

[11] It is appropriate to note the judicial sentiment expressed in *United States v. Saladoff,* 233 F. Supp. 255, 257 (E.D.Pa. 1964): "Although an estoppel may be worked against the government in certain limited circumstances, the principle should be applied sparingly with caution and restraint." [Citations omitted.]

[Petitioners] simply paid a tax which was lawful for [them] to pay. The decisions are numerous and without dissent that the Commissioner of Internal Revenue may re-examine and redetermine a taxpayer's liability within the period of limitations. [Citations omitted. *Knapp-Monarch Co. v. Commissioner, supra* at 864.]

We conclude that neither section 7121 nor the doctrine of equitable estoppel prevents the assessment and collection of the deficiency asserted by respondent. We have also concluded that respondent correctly determined a deficiency of $1,364.35 in petitioners' income tax liability for 1969. The amount of $216.36 previously paid by petitioners as additional tax and interest will be taken into account in determining petitioners' tax liability for 1969.

*Decision will be entered for the respondent.*