T.C. Memo. 2000-144


UNITED STATES TAX COURT



ILIJA & BRANKA MITIC, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5062-98.                          Filed April 20, 2000.


Ilija Mitic, pro se.

<u>Paul K. Webb</u>, for respondent.



MEMORANDUM FINDINGS OF FACT AND OPINION


CHIECHI, <u>Judge</u>:  Respondent determined the following defi-

ciencies in, and accuracy-related penalties under section

6662(a)[1] on, petitioners' Federal income tax:

---

[1]All section references are to the Internal Revenue Code in
effect for the years at issue.  All Rule references are to the
Tax Court Rules of Practice and Procedure.

- 2 -

| Year | Deficiency | Accuracy-Related Penalty |
|------|-----------|--------------------------|
| 1993 | $3,778 | $756 |
| 1994 | 17,720 | 3,544 |

The issues remaining for decision are:

(1) Are petitioners entitled to a medical expense deduction for 1993 in excess of that allowed by respondent?  We hold that they are not.

(2) Are petitioners entitled to the casualty loss deduction that they claimed for 1994 with respect to property damage resulting from an automobile accident?  We hold that they are not.

(3) Are petitioners entitled to the depreciation deduction that they claimed for 1994 with respect to a Geo automobile?  We hold that they are not.

(4) Are petitioners liable for each of the years at issue for the accuracy-related penalty under section 6662(a)?  We hold that they are.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At all relevant times, including at the time the petition was filed, petitioners Ilija Mitic (Mr. Mitic) and Branka Mitic (Ms. Mitic) resided in a house (petitioners' residence) located at 726 Glenborough Drive, Mountain View, California.

Claimed Medical Expense Deduction

Since at least 1980, Ms. Mitic has suffered from various

- 3 -

allergies, asthma, and related medical problems.  A typewritten letter regarding Ms. Mitic from James D. Wolfe, M.D. (Dr. Wolfe), that was dated June 27, 1980 (June 27, 1980 letter), stated:

> TO WHOM IT MAY CONCERN:
>
> Mrs. Branka Mitic has perennial rhinitis and nasal polyposis.  She has been found to be allergic to dust and would benefit from removal of the carpet in the bedroom.

An individual whose identity is not disclosed by the record added the letter "s" by hand to the typewritten word "bedroom" in the June 27, 1980 letter.

Sometime in 1993, Ms. Mitic decided to attempt to conduct a home decorating consulting activity known as Branka's Interior Design (Branka's Design).  The theory behind Branka's Design was to purchase furniture and other decorator items for petitioners' residence so that that residence could be used as a showroom for prospective customers of Branka's Design.  During 1993 and 1994, Ms. Mitic purchased tens of thousands of dollars' worth of various items of furniture and other decorator items that were placed in petitioners' residence.

In addition, during the period from around mid-September to November 1993, petitioners paid to have (1) all of the carpeting removed from their residence, (2) ¾-inch by 2¼-inch red oak select grade hardwood flooring installed in all areas of that residence except the hallways, kitchen, and bathrooms, and (3) the interior of their residence repainted after installation

of the hardwood flooring.  Petitioners rented and resided in an apartment while the foregoing work was being done in their residence in order to prevent exposure of Ms. Mitic to the dust, paint, and other pollutants that were generated by that work. Petitioners did not have their residence appraised either before or after the carpeting was removed from, and the hardwood floors were installed in, their residence and the interior of that residence was repainted.

On February 7, 1994, Ms. Mitic purchased for a total price of $8,370 a Chinese rug measuring approximately 6 feet by 9 feet and a Persian rug measuring approximately 9 feet by 12½ feet. Petitioners placed those rugs on the hardwood floor in their residence.

Claimed Casualty Loss Deduction

On November 2, 1994, while driving on vacation in Mr. Mitic's 1989 Mercedes-Benz 560 SEL (Mr. Mitic's Mercedes) to Lake Tahoe, California, petitioners were involved in an automobile accident (petitioners' automobile accident).  At the time of petitioners' automobile accident, Mr. Mitic's Mercedes, which he had purchased in 1989 for $67,500, had relatively low mileage (i.e., 21,921 miles), had been exceptionally well maintained, and was insured by State Farm Mutual Automobile Insurance Co. (State Farm).  As a result of petitioners' automobile accident, Mr. Mitic's Mercedes was totaled, i.e., damaged beyond reasonable

- 5 -

repair.

Sometime shortly after petitioners' automobile accident, petitioners retained an attorney, Ismael D. Perez (Mr. Perez), to represent them in dealing with State Farm regarding their property damage claim with respect to Mr. Mitic's Mercedes (automobile damage claim). In a letter dated November 17, 1994, Mr. Perez demanded $70,000 from State Farm to settle that claim. By letter dated December 13, 1994, State Farm offered to settle the automobile damage claim for $40,086 plus taxes and appropriate fees (settlement offer). By letter dated December 18, 1994, Mr. Perez rejected, and asked State Farm to reconsider, that settlement offer. By letters dated December 19 and 20, 1994, State Farm renewed its offer to settle the automobile damage claim for $40,086 plus taxes and appropriate fees.

Thereafter, negotiations between State Farm and Mr. Perez regarding the automobile damage claim continued until at least March 28, 1995. By letters dated January 11 and 18, 1995, Mr. Perez asked State Farm to remit to petitioners the full amount of State Farm's settlement offer in order to mitigate the damages relating to the automobile damage claim. Those letters indicated that such a request was not intended to release State Farm from liability or to waive petitioners' right to pursue that claim in court.

In response, State Farm sent a letter to Mr. Perez dated

January 24, 1995.  That letter stated in pertinent part:

> We believe the Actual Cash Value of the involved 1989
> Mercedes is $40,086.  To this figure we add sales tax,
> $3,307.10, pro-rated license fees, $89.00, and subtract
> the deductible, $200.00.  This gives us a figure of
> $43,282.10.
>
> *     *     *     *     *     *     *
>
> We will continue to handle the claim pursuant to the
> California Code of Regulations, Title 10. [sic] Chapter
> 5, Subchapter 7.5, Section 2695.8.

By letter dated January 27, 1995, Mr. Perez asked State Farm to issue a check payable to petitioners in the total amount of $43,282.10 and stated that petitioners "will continue to keep the claim open to determine if * * * [they] are entitled to more."

By check dated February 2, 1995, State Farm sent petitioners $43,282.10 in settlement of the automobile damage claim.  By letter dated March 8, 1995, Mr. Perez notified State Farm that petitioners were unable to purchase an automobile that was comparable to Mr. Mitic's Mercedes for the amount of State Farm's settlement offer and asked State Farm to reopen the automobile damage claim.  By letter dated March 28, 1995, State Farm informed Mr. Perez that, based on further investigation, "the settlement amount of $40,086.00 (base selling price), plus sales tax and pro-rated DMV fees which we paid for your clients' car is fair and reasonable."

At no time in 1994 and 1995 during the negotiations between State Farm and Mr. Perez with respect to the automobile damage

claim did State Farm deny liability for that claim, although it did dispute that it was liable as the insurer of Mr. Mitic's Mercedes for the amount demanded by Mr. Perez on behalf of petitioners. The November-December 1994 edition of Kelley Blue Book suggested a retail value of $42,560 for a 1989 Mercedes-Benz 560 SEL with under 40,000 miles.

Claimed Depreciation Deduction

Petitioners purchased a 1993 Geo automobile (Geo) from their son in return for a check dated December 8, 1994, that they issued to him. On December 20, 1994, title to that automobile was registered in the names of Mr. Mitic and Ms. Mitic. Petitioners kept no mileage log, calendar, or other documentation regarding their use of the Geo in 1994.

Petitioners' Returns for the Years at Issue

Petitioners filed a joint Form 1040, U.S. Individual Income Tax Return (joint return), for each of the years 1993 and 1994. In each of those joint returns, Mr. Mitic listed his occupation as "Accountant". In the 1993 joint return, Ms. Mitic listed her occupation as "Accountant", and in the 1994 joint return, she listed her occupation as "S.E. interior design". Mr. Mitic signed the 1993 and 1994 joint returns on February 1, 1994, and February 3, 1995, respectively. Ms. Mitic signed the 1994 joint

return on February 3, 1995.[2]

In Schedule A, Itemized Deductions, of the 1993 joint return, petitioners claimed a deduction totaling $20,607.57 for "Medical and dental expenses". That deduction consisted of: (1) $3,889 for physicians and medicines; (2) $8,573 for the removal of carpeting from, and the installation of hardwood flooring in, petitioners' residence; (3) $5,525 for repainting the interior of petitioners' residence after the hardwood flooring was installed; and (4) $2,621 for renting an apartment in which petitioners lived while they had the foregoing work done in their residence.

In the 1993 joint return, petitioners claimed depreciation deductions with respect to a Toyota automobile (Toyota) and claimed depreciation deductions and other deductions with respect to Mr. Mitic's Mercedes and another automobile.

In Schedule A of the 1994 joint return, petitioners claimed a casualty loss deduction of $40,500 with respect to Mr. Mitic's Mercedes. As required, petitioners filed Form 4684, Casualties and Thefts (Form 4684), with the 1994 joint return. In section B of Form 4684, Business and Income-Producing Property, part I, Casualty or Theft Gain or Loss, petitioners indicated (1) that the "Cost or adjusted basis" of Mr. Mitic's Mercedes was $67,500,

---

[2]The record does not disclose when Ms. Mitic signed the 1993 joint return.

- 9 -

(2) that the "Insurance or other reimbursement" with respect to that automobile was $27,000, (3) that they had no gain from a casualty or theft, (4) that the fair market value before the casualty or theft of Mr. Mitic's Mercedes was $55,000, (5) that the fair market value of that automobile after the casualty or theft was zero, and (6) that the amount of the casualty loss with respect to Mr. Mitic's Mercedes was $40,500. The amount of $27,000 that petitioners indicated in Form 4684 was the "Insurance or other reimbursement" with respect to that vehicle represented petitioners' estimate of the amount to be paid by State Farm in settlement of the automobile damage claim.

In the 1994 joint return, petitioners claimed a depreciation deduction for the entire year with respect to the Geo that they had purchased from their son in December 1994. Petitioners also claimed in the 1994 joint return depreciation deductions with respect to the Toyota and another automobile.

Notice of Deficiency

In the notice of deficiency (notice) issued to petitioners for the years at issue, respondent, inter alia, disallowed: (1) For 1993 the entire medical expense deduction, except for $3,889 for physicians and medicines, that petitioners claimed in the 1993 joint return (petitioners' claimed medical expense deduction at issue) and (2) for 1994 (a) the casualty loss deduction with respect to Mr. Mitic's Mercedes and (b) the

claimed depreciation deduction with respect to the Geo. Respondent also determined in the notice that petitioners are liable for each of the years at issue for the accuracy-related penalty under section 6662(a).

## OPINION

Petitioners bear the burden of proving that the determinations in the notice are erroneous.[3] See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

<u>Claimed Medical Expense Deduction</u>

Petitioners claimed in the 1993 joint return a medical expense deduction for, inter alia, expenditures incurred in removing carpeting from, installing hardwood flooring in, and repainting the interior of petitioners' residence and renting an apartment in which they resided while that work was being done. Respondent disallowed the deduction claimed for those expenditures.

Section 213 allows a deduction for expenses paid during the taxable year, and not compensated for by insurance or otherwise, for medical care of a taxpayer, his spouse, or a dependent to the extent that those expenses exceed 7.5 percent of the taxpayer's

---

[3]Each petitioner and respondent signed the first stipulation of settled issues filed in this case. However, only Mr. Mitic, and not Ms. Mitic, appeared at trial and signed the stipulation of facts which respondent also executed. Consequently, respondent filed a motion to dismiss for lack of prosecution as to Ms. Mitic (respondent's motion), which the Court took under advisement. See <u>infra</u> note 11.

adjusted gross income.  See sec. 213(a).  As pertinent here,

section 213(d)(1)(A) defines the term "medical care" to mean

"amounts paid for the * * * cure, mitigation, treatment, or

prevention of disease, or for the purpose of affecting any

structure or function of the body".  Section 1.213-1(e)(1)(ii),

Income Tax Regs., provides that "Deductions for expenditures for

medical care allowable under section 213 will be confined strict-

ly to expenses incurred primarily for the prevention or allevia-

tion of a physical or mental defect or illness."  An expenditure

that "is merely beneficial to the general health of an individ-

ual, such as an expenditure for a vacation, is not an expenditure

for medical care."  Id.  Capital expenditures generally are not

deductible.  See sec. 263 and the regulations thereunder.

> However, an expenditure which otherwise qualifies as a
> medical expense under section 213 shall not be disqual-
> ified merely because it is a capital expenditure.  For
> purposes of section 213 and this paragraph, a capital
> expenditure made by the taxpayer may qualify as a
> medical expense, if it has as its primary purpose the
> medical care (as defined in subdivisions (i) and (ii)
> of this subparagraph) of the taxpayer, his spouse, or
> his dependent.  Thus, a capital expenditure which is
> related only to the sick person and is not related to
> permanent improvement or betterment of property, if it
> otherwise qualifies as an expenditure for medical care,
> shall be deductible * * *.  Moreover, a capital expen-
> diture for permanent improvement or betterment of
> property which would not ordinarily be for the purpose
> of medical care (within the meaning of this paragraph)
> may, nevertheless, qualify as a medical expense to the
> extent that the expenditure exceeds the increase in the
> value of the related property, if the particular expen-
> diture is related directly to medical care.  Such a
> situation could arise, for example, where a taxpayer is
> advised by a physician to install an elevator in his

residence so that the taxpayer's wife who is afflicted with heart disease will not be required to climb stairs. If the cost of installing the elevator is $1,000 and the increase in the value of the residence is determined to be only $700, the difference of $300, which is the amount in excess of the value enhancement, is deductible as a medical expense. If, however, by reason of this expenditure, it is determined that the value of the residence has not been increased, the entire cost of installing the elevator would qualify as a medical expense.

Sec. 1.213-1(e)(1)(iii), Income Tax Regs.

Section 213(d)(2) provides that amounts which are not lavish or extravagant under the circumstances that are paid for lodging while away from home primarily for and essential to medical care referred to in section 213(d)(1)(A) are to be treated as amounts paid for medical care if --

> (A) the medical care referred to in * * * [section 213(d)(1)(A)] is provided by a physician in a licensed hospital (or in a medical care facility which is related to, or the equivalent of, a licensed hospital), and
>
> (B) there is no significant element of personal pleasure, recreation, or vacation in the travel away from home.

The amount taken into account under the preceding sentence shall not exceed $50 for each night for each individual.

Mr. Mitic contends that petitioners took "deductions for medical expenditures in the past which were not challenged by IRS and have been allowed". Consequently, according to Mr. Mitic, this Court should allow petitioners' claimed medical expense deduction at issue for 1993. We disagree. This Court is not

- 13 -

bound by the actions or inactions of respondent with respect to medical expense deductions claimed by petitioners for years prior to 1993.

Mr. Mitic also contends that petitioners are entitled to petitioners' claimed medical expense deduction at issue for 1993 because the expenditures in question (1) "were approved and recommended [by] Dr. James Wolfe" as expenditures from which Ms. Mitic "would benefit medically" and (2) "were reasonable and medically related to wife's [Ms. Mitic's] chronic asthma condition." Those contentions are not supported by the record in this case. Even if they were, on the record before us, we find that Mr. Mitic has failed to prove that the expenditures in question qualify under section 213 and the regulations thereunder as deductible expenses for the medical care of Ms. Mitic.

We consider first the rental expense incurred by petitioners while the carpeting was removed from, and the hardwood flooring was installed in, petitioners' residence and the interior of that residence was repainted. On the record before us, we find that Mr. Mitic has failed to show that Dr. Wolfe approved and recommended that rental expense and that it qualifies as an expense paid for medical care under section 213. See sec. 213(d)(2).

We turn now to the remaining expenditures in question consisting of the amounts paid by petitioners to have the carpeting removed and hardwood flooring installed throughout their

residence and the interior of that residence repainted. On the instant record, we reject Mr. Mitic's contentions that all of those expenditures "were approved and recommended" by Dr. Wolfe as expenditures from which Ms. Mitic "would benefit medically" and were "medically related" to Ms. Mitic's asthmatic condition.

To support his contention regarding Dr. Wolfe, Mr. Mitic apparently relies on the June 27, 1980 letter from Dr. Wolfe. We find Mr. Mitic's reliance on that letter to be misplaced. The June 27, 1980 letter was prepared over 13 years before the expenditures in question were incurred. We find that letter to have very little, if any, probative value regarding why petitioners decided to remove carpeting from, and install hardwood flooring in, their residence and have that residence repainted. In this connection, during 1993 and 1994, Ms. Mitic purchased tens of thousands of dollars' worth of various items of furniture, rugs, and other decorator items that were placed in petitioners' residence. She purchased those items in an effort to begin an interior design activity that was based on the theory that petitioners' residence was to be used as a showcase for prospective customers of that design activity. On the record before us, we believe that it is more reasonable to conclude that the expenditures relating to the removal of carpeting, installation of hardwood flooring, and painting throughout petitioners' residence were incurred primarily to accomplish Ms. Mitic's

objective of converting petitioners' residence into a showcase to be used in her interior design activity, rather than "primarily for the prevention or alleviation of a physical * * * illness" of Ms. Mitic within the meaning of section 1.213-1(e)(1)(ii), Income Tax Regs.

Moreover, removal of carpeting and installation of hardwood flooring throughout petitioners' residence and repainting of that residence were not approved and recommended by Dr. Wolfe in the June 27, 1980 letter, as Mr. Mitic contends, as expenditures that would benefit medically Ms. Mitic. In fact, the June 27, 1980 letter, as typewritten, merely stated that Ms. Mitic "has been found to be allergic to dust and would benefit from removal of the carpet in the bedroom".[4] Furthermore, we find that Ms. Mitic's purchase in early February 1994 of a Chinese rug and a Persian rug for $8,370, which were placed on the newly installed hardwood flooring of petitioners' residence, belies Mr. Mitic's contentions (1) that the carpeting was removed from, and hardwood flooring was installed in, petitioners' residence and the interior of that residence was repainted because Dr. Wolfe approved and recommended that that work be done and (2) that the expendi-

---

[4]Although the June 27, 1980 letter is a typewritten letter, the letter "s" was added by hand to the word "bedroom" in that letter. We are not persuaded by the June 27, 1980 letter that Dr. Wolfe, who did not testify at trial, stated in the June 27, 1980 letter that Ms. Mitic would benefit from removal of the carpeting in bedrooms other than Ms. Mitic's bedroom or in other rooms in petitioners' residence.

tures for that work were medically related to Ms. Mitic's asthmatic condition.

Based on our examination of the entire record in this case, we find that Mr. Mitic has failed to prove that petitioners' claimed medical expense deduction at issue for 1993 was for expenses for medical care of Ms. Mitic under section 213 and the regulations thereunder.[5] We further find on that record that Mr. Mitic has failed to show error in respondent's determination disallowing that deduction. Consequently, we sustain that determination.

Claimed Casualty Loss Deduction

In the 1994 joint return, petitioners claimed a casualty loss deduction of $40,500 with respect to Mr. Mitic's Mercedes

---

[5]Assuming arguendo that we had found that petitioners' claimed medical expense deduction at issue for 1993 as it relates to petitioners' expenditures for removing carpeting and installing hardwood flooring throughout petitioners' residence and painting the interior of that residence was for expenses for medical care under sec. 213 and the regulations thereunder, we find on the instant record that petitioners nonetheless are not entitled to deduct those expenditures under sec. 213. That is because on the instant record we find that Mr. Mitic has failed to establish that those expenditures, which we find to be capital expenditures for the permanent improvement or betterment of petitioners' residence, satisfy the requirements of sec. 1.213-1(e)(1)(iii), Income Tax Regs., relating to capital expenditures otherwise qualifying as medical expenses under sec. 213 and the regulations thereunder. In this connection, Mr. Mitic admitted at trial that no appraisal was made of petitioners' residence either before or after petitioners had the carpeting removed from, and hardwood flooring installed in, that residence and had it repainted.

which was totaled in petitioners' automobile accident that occurred in early November 1994. Petitioners calculated that claimed casualty loss deduction by subtracting their $27,000 estimate of the amount of insurance to be paid by State Farm from $67,500, the amount that they paid to purchase that automobile. Respondent disallowed petitioners' claimed casualty loss deduction for 1994.

Section 165(a) allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise.[6] A loss is treated as sustained during the taxable year in which the loss occurs, as evidenced by closed and com-

_____

[6]The amount of any deductible casualty loss sustained generally is equal to the lesser of (1) the amount equal to the fair market value of the property in question immediately before the casualty reduced by the fair market value of that property immediately after the casualty or (2) the amount of the adjusted basis of the property prescribed in sec. 1.1011-1, Income Tax Regs., for determining the loss from the sale or other disposition of the property involved. See sec. 1.165-7(b), Income Tax Regs. However, if property used in a trade or business or held for the production of income is totally destroyed by casualty, and if the fair market value of such property immediately before the casualty is less than the adjusted basis of such property prescribed in sec. 1.1011-1, Income Tax Regs., the amount of the adjusted basis of such property is to be treated as the amount of the loss for purposes of sec. 165(a). See id.

Moreover, in the case of a personal casualty loss (i.e., a casualty loss of an individual of property not connected with a trade or business or a transaction entered into for profit), the amount of such loss otherwise properly calculated under sec. 165 and the regulations thereunder is deductible for the taxable year only to the extent such loss (assuming there are no personal casualty gains) exceeds 10 percent of the individual taxpayer's adjusted gross income. See sec. 165(h)(2)(A).

pleted transactions and as fixed by identifiable events occurring in such taxable year.  See sec. 1.165-1(d)(1), Income Tax Regs. If a casualty occurs that may result in a loss and, in the year of such casualty, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, for purposes of section 165 no portion of the loss with respect to which reimbursement may be received is sustained until it can be ascertained with reasonable certainty whether or not such reim- bursement will be received.  See sec. 1.165-1(d)(2)(i), Income Tax Regs.  Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact that must be determined upon an examination of all the facts and circumstances.  See id.  Whether or not reimbursement of a loss will be received may be ascertained with reasonable cer- tainty by, for example, a settlement of the claim, an adjudica- tion of the claim, or an abandonment of the claim.  See id.

Mr. Mitic contends that respondent erred in disallowing petitioners' claimed casualty loss deduction for 1994.  According to Mr. Mitic, petitioners' position in the 1994 joint return with respect to the claimed casualty loss deduction was required by Form 4684 and the instructions for that form.[7]  We disagree.

---

[7]As we understand it, Mr. Mitic alternatively argues that if we were to find that petitioners are not entitled to the claimed casualty loss deduction for 1994, they would be entitled to a casualty loss deduction for 1995 that is calculated by subtract-
(continued...)

As for Form 4684, it was petitioners who took the position in that form which they filed with the 1994 joint return that Mr. Mitic's Mercedes was property used in a trade or business or for income-producing purposes.[8]  Consequently, it was they who decided to report the casualty loss with respect to that automobile in section B, Business and Income-Producing Property, of Form 4684.  Furthermore, in completing part I, Casualty or Theft Gain or Loss, in section B of Form 4684, it was petitioners who decided to report as the "Cost or adjusted basis" of Mr. Mitic's Mercedes the original purchase price ($67,500) of that automobile.  They took that position even though they had depreciated Mr. Mitic's Mercedes in prior years, and consequently the adjusted basis of that automobile, as depreciated by petitioners, would have been less than its original cost.  It was also peti-

---

[7](...continued)
ing the amount of insurance ($43,282.10) actually paid to them by State Farm in early February 1995 with respect to Mr. Mitic's Mercedes from the amount ($67,500) that petitioners paid to purchase that vehicle.  We have no jurisdiction over petitioners' taxable year 1995.  Both the notice issued by respondent and the petition filed by petitioners relate only to petitioners' taxable years 1993 and 1994.

[8]Except for Mr. Mitic's general and conclusory testimony on which we are unwilling to rely, the record contains no evidence establishing that in 1994 Mr. Mitic's Mercedes was property used in a trade or business or in a transaction entered into for profit.  Nor does the record establish that the loss, if any, sustained with respect to that vehicle was incurred in a trade or business or in a transaction entered into for profit.  To the contrary, Mr. Mitic stipulated that petitioners were traveling to Lake Tahoe on vacation at the time petitioners' automobile accident occurred.

tioners who decided to report as "Insurance or other reimburse-
ment" in part I of section B of Form 4684 an estimate of $27,000,
and not the settlement amount of $40,086 plus taxes and appropri-
ate fees that State Farm offered to petitioners at the end of
1994 in settlement of the automobile damage claim.

As for the instructions for Form 4684, we take judicial
notice of those instructions which are not part of the record in
this case. Those instructions explicitly state that if the
taxpayer is not sure whether part of the claimed casualty loss
will be reimbursed, the taxpayer may not deduct that part until
the tax year when it is reasonably certain that it will not be
reimbursed. The instructions for Form 4684 thus are totally
consistent with section 1.165-1(d)(2)(i), Income Tax Regs. In
addition, those instructions explicitly state that, in reporting
in part I of section B of Form 4684 the "Cost or adjusted basis"
of property used in a trade or business or for income-producing
purposes, it is necessary to deduct depreciation allowed or
allowable.

We conclude that Mr. Mitic's contention that petitioners'
position in the 1994 joint return with respect to their claimed
casualty loss deduction was required by Form 4684 and the in-
structions for that form is without merit.

We shall now determine on the basis of the instant record
and the applicable law whether petitioners are entitled to the

casualty loss deduction that they claimed in the 1994 joint return. The record establishes that shortly after petitioners' automobile accident in early November 1994 petitioners hired Mr. Perez, an attorney, to represent them, and he submitted the automobile damage claim to State Farm on their behalf with respect to Mr. Mitic's Mercedes. At no time in 1994 and 1995 during the negotiations between State Farm and Mr. Perez with respect to the automobile damage claim did State Farm deny liability for that claim, although it did dispute that it was liable as the insurer of Mr. Mitic's Mercedes for the amount demanded by Mr. Perez on behalf of petitioners. In fact, at the end of December 1994, State Farm offered to settle the automobile damage claim for $40,086 plus taxes and appropriate fees.

On the record before us, we find that in 1994 petitioners had a reasonable prospect of recovery with respect to the automobile damage claim and that they could not have ascertained with reasonable certainty in that year whether they would receive the entire amount of that claim. We further find on the instant record that although petitioners knew with reasonable certainty in 1994 that they would collect some insurance with respect to the automobile damage claim, they did not know with reasonable certainty the amount thereof. See Commissioner v. Harwick, 184 F.2d 835 (5th Cir. 1950), affg. a Memorandum Opinion of this Court dated Oct. 4, 1949; Hudock v. Commissioner, 65 T.C. 351,

361 (1975); sec. 1.165-1(d)(2), Income Tax Regs.

Based on our examination of the entire record before us, we find that Mr. Mitic has failed to establish that under section 1.165-1(d)(1) and (2), Income Tax Regs., petitioners sustained any loss in 1994 with respect to Mr. Mitic's Mercedes. We further find on that record that Mr. Mitic has failed to show that petitioners are entitled to the casualty loss deduction claimed in the 1994 joint return. Consequently, we sustain respondent's determination disallowing that claimed deduction.

Claimed Depreciation Deduction

In the 1994 joint return, petitioners claimed a depreciation deduction for the entire year with respect to the Geo that petitioners acquired from their son in December 1994. Respondent disallowed that deduction. Mr. Mitic makes no argument on brief with respect to the depreciation deduction that petitioners claimed for 1994 with respect to the Geo.

Section 167(a) allows a deduction for depreciation with respect to property used in a trade or business or held for the production of income. Based on our examination of the entire record before us, we find that Mr. Mitic has failed to establish that during 1994 petitioners used the Geo in a trade or business or held it for the production of income.[9] We further find on

---

[9]Mr. Mitic conceded at trial that petitioners kept no mileage log, calendar, or other documentation to show that the Geo
(continued...)

that record that Mr. Mitic has failed to prove that petitioners are entitled to the depreciation deduction claimed with respect to the Geo in the 1994 joint return.  Consequently, we sustain respondent's determination disallowing that deduction.

Accuracy-Related Penalty Under Section 6662(a)

Respondent determined that petitioners are liable for each of the years at issue for the accuracy-related penalty under section 6662(a).  Mr. Mitic makes no argument on brief regarding those penalties.

Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the underpayment of tax resulting from a substantial understatement of income tax.  An understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax shown in the tax return, see sec. 6662(d)(2)(A), and is substantial in the case of an individual if it exceeds the greater of 10 percent of the tax required to be shown or $5,000, see sec. 6662(d)(1)(A).

The accuracy-related penalty under section 6662(a) does not

---

[9](...continued) was used during 1994 in a trade or business or held for the production of income.  In this connection, the record establishes that petitioners also claimed in the 1994 joint return depreciation deductions with respect to at least two other automobiles. We find it incredible that petitioners used the Geo as well as those two other vehicles during 1994 in one or more trades or businesses or held them for the production of income, especially in light of Mr. Mitic's testimony that Ms. Mitic was too ill to work during 1994.

apply to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith. See sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant. See sec. 1.6664-4(b)(1), Income Tax Regs.

Based on our examination of the entire record before us, we find that Mr. Mitic, who listed his occupation in both the 1993 and 1994 joint returns as "Accountant", has failed to establish that petitioners are not liable for the years at issue for the accuracy-related penalties under section 6662(a).[10]

We have considered all of the arguments of Mr. Mitic that are not discussed herein, and we find them to be without merit and/or irrelevant.

To reflect the foregoing and the concessions of the parties,[11]

---

[10]The amount of the accuracy-related penalty for which petitioners are liable for each of the years at issue shall be determined in the Rule 155 computations by taking into account the concessions of the parties in the first stipulation of settled issues filed in this case.

[11]After Rule 155 computations have been submitted, we shall grant respondent's motion and enter a decision with respect to
(continued...)

Decision will be entered under Rule 155.

---

Ms. Mitic in the same amounts as the amounts reflected in the decision entered with respect to Mr. Mitic.