NEWMAN E. MCGEE AND BONNIE C. MCGEE, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent; PROFESSOR BOWL, INC., Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McGee v. Commissioner
Docket Nos. 6785-89, 6786-89
United States Tax Court
T.C. Memo 1991-599; 1991 Tax Ct. Memo LEXIS 635; 62 T.C.M. (CCH) 1375; T.C.M. (RIA) 91599; December 4, 1991, Filed *635 Decision will be entered under Rule 155. James Allen Brown, for the petitioners. Nancy W. Hale, for the respondent. DAWSON, Judge. DAWSON
MEMORANDUM OPINION In these consolidated cases respondent determined deficiencies in and additions to petitioners' [1] Federal income taxes as follows: NEWMAN E. MCGEE AND BONNIE C. MCGEE -- Docket No. 6785-89
Additions to Tax
Year
Deficiency
[2]Sec. 6651(a)(1) Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1982
$ 27,454
--  $ 1,373
*
$ 6,864
1983
4,123
--  206
*
-- 1984
4,336
$ 2,586
744
*
-- PROFESSOR BOWL, INC. -- Docket No. 6786-89
Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1982
$ 39,688
--  $ 1,984
*
$ 9,922
1983
3,744
--  187
*
-- 1984
22,432
$ 5,608
1,121
*
-- *636 Respondent has made substantial concessions, including a concession that no deficiency and addition to tax is due from Professor Bowl, Inc., for 1983, and petitioners have made some concessions, all of which can be given effect in the Rule 155 computations. The issues remaining for decision are: (1) Whether the periods for assessing deficiencies against Mr. and Mrs. McGee for 1982 and 1983 and against Professor Bowl, Inc., for 1982 expired prior to January 12, 1989, the date on which respondent mailed his statutory notices of deficiencies in these cases; (2) whether withdrawals Mr. McGee (president and shareholder of Professor Bowl, Inc.) made from Professor Bowl, Inc., in 1982, 1983, and 1984, were bona fide loans, corporate distributions, or compensation for services; (3) whether Mr. and Mrs. McGee received constructive dividends from Professor Bowl, Inc., stemming from their personal use of corporate automobiles in 1982, 1983, and 1984; (4) whether petitioners are liable for section 6651(a) additions to tax for filing delinquent returns for 1984; (5) whether Mr. and Mrs. McGee are liable for the additions to tax for negligence or intentional disregard of rules or regulations *637 pursuant to section 6653(a)(1) and (2) for 1982, 1983, and 1984, and whether Professor Bowl, Inc., is liable for such additions for 1982 and 1984; and (6) whether petitioners are liable for the addition to tax for substantial understatements pursuant to section 6661 for 1982. For convenience and clarity, we have combined our findings of fact and opinion with respect to each issue. Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. General Findings
At the time they filed their petition, Newman E. McGee and Bonnie C. McGee, husband and wife, resided in Little Rock, Arkansas. They timely filed joint Federal income tax returns for 1982 and 1983. They delinquently filed a joint return for 1984 on July 15, 1987. They did not apply for an extension of time to file such return. Professor Bowl, Inc. (Professor Bowl), is an Arkansas corporation which reports its income on a calendar year basis. At the time it filed its petition, Professor Bowl maintained its principal place of business in Little Rock, Arkansas. It filed its Federal corporate income tax return for 1982 on August *638 29, 1983. Professor Bowl delinquently filed its 1984 income tax return on July 15, 1987. It did not apply for an extension of time to file such return. At all pertinent times, Mr. McGee was a full-time professor at the University of Arkansas in Little Rock. He was also the president and a 50-percent shareholder of Professor Bowl. The remaining 50 percent of the issued and outstanding shares of Professor Bowl stock was held by Gladys Post, who is not related to Mr. McGee. Ms. Post was inactive in the management activities of the corporation. Mr. McGee provided substantial services to the corporation. As of the date of trial, Professor Bowl had never declared a dividend to its shareholders. Professor Bowl operated a bowling alley in Little Rock, Arkansas, during the years in issue. The bowling alley was located in a building which Professor Bowl rented from Southway Corporation. Mr. McGee was a 50-percent shareholder in Southway Corporation. Professor Bowl maintained a cash custodial fund, known as the "Prize Fund," which it held on behalf of bowling leagues that patronized the bowling alley. Professor Bowl served as a trustee to hold such funds for the leagues' promotions *639 and activities. The Prize Fund was not a corporate asset of Professor Bowl. Mr. McGee would sometimes borrow money from the fund, and evidenced such borrowing with notes. As of the time of trial, Mr. McGee had fully repaid all such loans. Professor Bowl's employees kept records of the Prize Fund, and the bowling leagues never complained of any misuse of the fund by Professor Bowl or Mr. McGee. Issue One: Statute of Limitations
We begin with the threshold issue as to whether the periods for assessing deficiencies against the McGees for 1982 and 1983 and against Professor Bowl for 1982 expired prior to January 12, 1989, the date on which respondent mailed the statutory notices of deficiencies with respect to such years. For the reasons stated below, we hold that the statute of limitations does not bar the assessment and collection of petitioners' deficiencies for such years. The McGees
Mr. and Mrs. McGee timely filed their 1982 joint Federal income tax return on April 15, 1983, and their 1983 return on April 15, 1984. See section 6501(b)(1). On March 11, 1985, a representative of respondent initiated an examination of the McGees' 1982 and 1983 tax returns. A "first *640 interview" was held on that date. During the next three years, based on requests by respondent, the McGees or their counsel executed the following Forms 872, "Consent to Extend the Time to Assess Tax" (hereinafter Forms 872), for 1982 and 1983: Forms 872 for Tax Year 1982
Dates Executed
Date Accepted
Period of Limitations
By McGees or
By IRS
For Assessment Extended To
Their Counsel
9/9/85
9/18/85
4/15/87
12/10/86
1/13/87
8/1/87
6/12/87
6/15/87
1/31/88
8/13/87
8/19/87
4/15/88
12/18/87
1/12/88
10/15/88
7/20/88
7/25/88
1/15/89
Forms 872 for Tax Year 1983
Date Executed
Date Accepted
Period of Limitations
By McGees or
By IRS
For Assessment Extended To
Their Counsel
12/10/86
1/13/87
8/1/87
6/12/87
6/15/87
1/31/88
8/13/87
8/19/87
4/15/88
12/18/87
1/12/88
10/15/88
7/20/88
7/25/88
1/15/89
None of these Forms 872 contained any restrictive language with respect to the extension of the period of limitations for assessment. On January 12, 1989, respondent mailed a statutory notice of deficiency with regard to Mr. and Mrs. McGee's 1982 and 1983 Federal income tax. Professor Bowl
Professor Bowl filed its 1982 Federal corporate income tax return on August 29, 1983. *641 On October 5, 1984, a representative of respondent initiated an examination of Professor Bowl's 1982 return. A "first interview" was held on that date. Based on requests by respondent, a representative of Professor Bowl executed the following Forms 872 for 1982: Forms 872 for Tax Year 1982
Date Executed
Date Accepted
Period of Limitations For
By Professor
By IRS
Assessment Extended To
Bowl
1/21/86
1/30/86
4/15/87
12/10/86
1/13/87
8/1/87
6/12/87
6/15/87
1/31/88
8/13/87
8/19/87
4/15/88
12/18/87
1/12/88
10/15/88
7/20/88
7/25/88
1/15/89
None of these Forms 872 contained any restrictive language with respect to the extension of the period of limitations for assessment. On January 12, 1989, respondent mailed a statutory notice of deficiency with regard to Professor Bowl's 1982 Federal income tax. Generally, income taxes must "be assessed within 3 years after the return was filed." Sec. 6501(a). [3] *642 A notice of deficiency mailed after the 3-year assessment period has expired is invalid. Sec. 6501(a). However, taxpayers and the Commissioner may consent in writing to extend the 3-year period of limitations on assessment. Sec. 6501(c)(4). [4]
It is facially apparent that assessments of any deficiency against petitioners for the years 1982 and 1983 are not barred by the statute of limitations. The Forms 872 executed by petitioners extended the various periods of limitations to January 15, 1989, and the statutory notices of deficiencies were mailed on January 12, 1989, within the extended periods. Petitioners do not dispute this fact. They contend, however, that their agreements to extend the statute of limitations should be held invalid because (a) they believed their consents *643 were conditional, or, in the alternative, (b) that respondent is equitably estopped from enforcing the consent forms against them. Specifically, petitioners argue that, at an October 21, 1986, meeting about extending certain statutes of limitations, respondent's representatives orally promised to have their report completed in January 1987. No Forms 872 were signed at the October meeting, but some were executed approximately two months later, in December 1986. Petitioners state that this "commitment" was not honored, and, in fact, that their cases were secretly referred to the Criminal Investigation Division. They argue that they relied on this commitment when they executed the Forms 872 in December 1986 and on subsequent dates. Thus, petitioners contend that these misrepresentations voided the Forms 872, and that the statutory notices of deficiencies were therefore mailed after the periods of limitations expired. In response, respondent contends that there was no oral or written agreement to complete the examination of petitioners' 1982 or 1983 income tax liabilities by January 1987. He points out that none of the consents to extend the periods of limitations contained any *644 limitation or restriction. An agreement to extend the statute of limitations for assessment and collection is not a contract but a waiver of a defense by the taxpayer. Stange v. United States, 282 U.S. 270, 75 L. Ed. 335, 51 S. Ct. 145 (1931); Schulman v. Commissioner, 93 T.C. 623, 639 (1989); Piarulle v. Commissioner, 80 T.C. 1035, 1042 (1983); Tallal v. Commissioner, 77 T.C. 1291 (1981), affd. on other issues 778 F.2d 275 (5th Cir. 1985). Contract principles are significant, however, because section 6501(c)(4) requires a written agreement, and we look to the objective manifestations of mutual assent, as evidenced by the parties' overt acts, not their secret intentions, to determine the terms of such agreement. Schulman v. Commissioner, 93 T.C. at 639; Piarulle v. Commissioner, 80 T.C. at 1042; 1 S. Williston, Contracts, secs. 22 and 35 (3d ed. 1957); 1 Restatement, Contracts 2d, sec. 19 (1979). In cases where taxpayers executed consents in the belief that they were conditional, but failed to reduce their understanding to a writing associated with the consents, we have found *645 the consents to be valid and unrestricted. See Kronish v. Commissioner, 90 T.C. 684 (1988); Tallal v. Commissioner, supra. In cases where we have granted relief from consents which appeared valid or unrestricted on their face, we have looked to the documents which were forwarded by the taxpayers with the consents. See Windfall Grain Co. v. Commissioner, 23 B.T.A. 725 (1931); Smith v. Commissioner, T.C. Memo 1989-87. Petitioners willingly signed [5] 17 separate Forms 872 which are unambiguous, unrestricted, and valid on their face. No written restrictions or additional contract terms were attached to the consent forms. Therefore, petitioners assented to agreements that, within the four corners of the documents, waived, without conditions or restrictions, the defense that respondent's deficiency notices were mailed after the 3-year assessment periods had expired. Whatever subjective belief or intent petitioners had to restrict their consents was never reduced to a writing associated with the written consent forms, and is therefore irrelevant to the interpretation of their written agreements. *646 See Kronish v. Commissioner, supra.Accordingly, we hold that petitioners have failed to prove that their consents to extend the time to assess tax should be disregarded in these cases. Alternatively, petitioners appear to argue that respondent should be equitably estopped from relying upon the consent forms to extend the Statutes of Limitations. To the contrary, respondent argues that petitioners have not shown the elements necessary to invoke the doctrine of equitable estoppel. We agree with respondent. The doctrine of equitable estoppel is applied against the Government "with the utmost caution and restraint." Schuster v. Commissioner, 312 F.2d 311, 317 (9th Cir. 1962), *647 affg. 32 T.C. 998 (1959) and revg. First Western Bank & Trust Co. v. Commissioner, 32 T.C. 1017 (1959); Boulez v. Commissioner, 76 T.C. 209, 214-215 (1981), affd. 258 U.S. App. D.C. 90, 810 F.2d 209 (D.C. Cir. 1987); Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977); Hudock v. Commissioner, 65 T.C. 351 (1975). "The policy in favor of an efficient collection of the public revenue outweighs the policy of the estoppel doctrine in its usual and customary context." Schuster v. Commissioner, 312 F.2d at 317. There are several conditions that must be satisfied before the doctrine is applied. Lignos v. United States, 439 F.2d 1365, 1368 (2d Cir. 1971); Boulez v. Commissioner, supra at 215; Estate of Emerson v. Commissioner, supra at 617-618. One of the conditions that must be satisfied is the existence of a false representation or wrongful, misleading silence by the party against whom the opposing party seeks to invoke the doctrine. Lignos v. United States, supra at 1368; Estate of Emerson v. Commissioner, supra at 617-618. *648 [6]
We do not view this situation as one of the rare instances where the doctrine of equitable estoppel can be seriously considered. First, the record provides no factual support for petitioners' *649 claim that respondent knowingly made false representations concerning how quickly the examination would be completed. See Fried, et al. v. Commissioner, T.C. Memo 1989-430, on appeal (11th Cir., June 24, 1991). Standing alone, Mr. McGee's assertion as to what respondent's agent said does not serve to establish that there was a false representation by the agent. Even assuming, arguendo, that the agent told Mr. McGee that the examination of petitioners' 1982 and 1983 income tax liabilities would be completed by January, 1987, the revenue agent did not have the authority to bind respondent. See United States v. Stewart, 311 U.S. 60, 85 L. Ed. 40, 61 S. Ct. 102 (1940); Bornstein v. United States, 170 Ct. Cl. 576, 345 F.2d 558 (1965); Wilkinson v. United States, 157 Ct. Cl. 847, 304 F.2d 469 (1962). It also seems incongruous that respondent's agent would either initiate or promote restrictions upon his ability to examine petitioners' income tax returns by telling them that the examinations would be completed by January, 1987. See Schulman v. Commissioner, supra. In fact, if petitioners *650 were as concerned, as they professed to be, about the examination's being speedily concluded, we fail to see why they agreed to extend the assessment period for as long an interval as they did. See Lillis, et al. v. Commissioner, T.C. Memo 1983-142, affd. without published opinion 740 F.2d 974 (9th Cir. 1984). In summary, we conclude that petitioners have failed to prove that there was a false representation by the revenue agent, and therefore the doctrine of equitable estoppel is not applicable in these circumstances. Accordingly, we hold that the statute of limitations does not bar respondent from assessing deficiencies against the McGees for 1982 and 1983 or against Professor Bowl for 1982. Issue Two: Loans, Distributions or Compensation
The second issue is whether withdrawals Mr. McGee made from Professor Bowl were bona fide loans, corporate distributions, or compensation for services. For the reasons stated below, we hold that such withdrawals were bona fide loans. Mr. McGee customarily withdrew corporate funds from Professor Bowl for his personal use. The withdrawals were recorded on Professor Bowl's books and records. The *651 corporation's general ledger records were maintained on a computer and updated monthly by an independent certified public accountant. We find that Professor Bowl maintained adequate books and records for the years in issue which were fairly typical of a small business. [7]
*652 The 1982 Withdrawals
At various times during 1982, Mr. McGee withdrew a total of $ 57,800 from Professor Bowl, which was recorded on the corporation's books in a "Loans to Shareholder" account. There are two note agreements, one in the amount of $ 5,000, dated March 8, 1982, and another in the amount of $ 4,000, dated June 22, 1982, evidencing loans from Professor Bowl to Mr. McGee. These are the only 1982 notes in the record. The amounts withdrawn from Professor Bowl were deposited into various accounts held by the McGees, including a "home construction account," personal checking account, and savings account. The McGees did not report these withdrawals on their 1982 Federal income tax return. However, between January and October 1982, the McGees repaid $ 49,300 of the total $ 57,800 withdrawn from Professor Bowl during that year. Such repayment is reflected in the corporation's books and records. The 1983 Withdrawals
At various times during 1983, Mr. McGee withdrew a total of $ 37,860 from Professor Bowl, which recorded these amounts in its "Loans to Shareholder" account. There are no notes in the record to evidence these withdrawals. The payments were deposited *653 into the McGee's home construction or personal checking accounts. The McGees did not report these payments on their 1983 Federal income tax return. However, between January and August 1983, the McGees repaid $ 11,500 of the $ 37,860 borrowed during that year. Such repayment is reflected in the corporation's books and records. The 1984 Withdrawals
At various times during 1984, Mr. McGee withdrew a total of $ 35,980 from Professor Bowl (which was not recorded in Professor Bowl's "Loans to Shareholder" account). The only note agreement between Professor Bowl and Mr. McGee evidencing part of this withdrawal is a note in the amount of $ 5,000, dated May 21, 1984. The payments were deposited into the McGees' home construction or personal checking accounts. The McGees reported $ 31,387 of these payments as consulting fees on their 1984 Federal income tax return. Between January and September 1984, Mr. McGee repaid $ 23,000 of his total debt (carried over from previous years) to Professor Bowl. Such repayment is reflected in the corporation's books and records. Professor Bowl Advertising Account
Mr. McGee received funds from Professor Bowl's "Advertising Account" in the *654 amounts of $ 4,000 for 1982 and $ 7,500 for 1983. This account was used to pay for advertising as well as business expenses (i.e., Professor Bowl's Christmas party expenses). These withdrawals were not reflected in the corporate books and records. Discussion
Mr. McGee contends that the withdrawals he made from Professor Bowl were bona fide loans. Respondent, on the other hand, contends that the withdrawals were dividend distributions, or, in the alternative, compensation for services. We agree with Mr. McGee. Whether shareholder withdrawals are bona fide loans or dividend distributions is a question of fact, which must be based upon a consideration and evaluation of all surrounding circumstances. Alterman Foods, Inc. v. United States, 505 F.2d 873, 875-876 (5th Cir. 1974); Berthold v. Commissioner, 404 F.2d 119, 121 (6th Cir. 1968), affg. T.C. Memo 1967-102; Chism's Estate v. Commissioner, 322 F.2d 956, 960 (9th Cir. 1963), affg. T.C. Memo 1962-6; Kaplan v. Commissioner, 43 T.C. 580, 595 (1965). The following factors are frequently applied in determining the *655 existence of a corporate loan: (1) The extent to which the shareholder controlled the corporation; (2) whether the corporation had a history of paying dividends; (3) the existence of earnings and profits; (4) the magnitude of the advances and whether a ceiling existed to limit the amount the corporation advanced; (5) how the parties recorded the advances on their books and records; (6) whether the parties executed notes; (7) whether security was provided for the advances; (8) whether there was a fixed schedule of repayment; (9) whether interest was paid or accrued; (10) whether the shareholder made any repayments; (11) whether the shareholder was in a position to repay the advances; and (12) whether the advances to the shareholder were made in proportion to his stock holdings. Alterman Foods, Inc. v. Commissioner, supra at 877 n.7; Pierce v. Commissioner, 61 T.C. 424, 430 (1974). Although courts have traditionally considered the above factors in determining the existence of a loan, the dispositive question is whether, at the time the transaction is entered into, the shareholder intended to repay the amounts received and the *656 corporation intended to require payment. Miele v. Commissioner, 56 T.C. 556, 567 (1971), affd. without published opinion 474 F.2d 1338 (3d Cir. 1973). Mr. McGee testified that he made the withdrawals from the corporation in good faith, intended to repay them, and repaid them in full. We note that a mere declaration by a shareholder that he intended a withdrawal to constitute a loan is insufficient if the transaction fails to meet more reliable indicia of debt. Williams v. Commissioner, 627 F.2d 1032, 1034 (10th Cir. 1980), affg. T.C. Memo 1978-306; Alterman Foods, Inc. v. Commissioner, 505 F.2d at 876. However, we found Mr. McGee's testimony to be credible, and we accept it as proof of his intent to repay the advances. Furthermore, he has repaid all the funds he withdrew from Professor Bowl. During the years in issue, the amounts repaid in comparison to the amounts owed were substantial and not merely nominal. After the years involved, all the loans were repaid, and the corporation actually became indebted to Mr. McGee. We find these facts to be significant. A shareholder's repayments *657 are strong evidence that a withdrawal was a loan. See Crowley v. Commissioner, T.C. Memo 1990-636. After considering all of the facts and circumstances, we hold that the withdrawals in question were, for the most part, bona fide loans. [8] *658 The following facts are persuasive: (1) Professor Bowl recorded the advances on its corporate books and records as well as on its corporate financial statements; (2) Mr. McGee executed several notes; (3) the loans were not in proportion to the stock ownership or profits of the corporation; and, most importantly, (4) Mr. McGee intended to fully repay the loans and eventually repaid the entire amounts. [9] See Alterman Foods, Inc. v. Commissioner, supra; Miele v. Commissioner, supra.While we recognize that Professor Bowl loaned money to Mr. McGee without security, notes for all of the loans, or interest, these facts do not compel an opposite conclusion. Such occurrences are not uncommon in dealings between shareholders and a closely held corporation. Miele v. Commissioner, 56 T.C. at 568. Issue Three: Personal Use of Corporate Automobiles
The third issue is whether Mr. and Mrs. McGee may be charged with constructive dividends stemming from their personal use of corporate automobiles. For the reasons stated below, we conclude that they may be so charged. During 1982, 1983, and 1984, Mr. McGee substantially used automobiles owned and paid for by Professor Bowl. The McGees have conceded that part of this use in 1983 and 1984 was for personal purposes. Only the amount of this use remains in dispute. For 1982, whether *659 Mr. McGee personally used corporate automobiles and the amount of such use remain in dispute. Taxable income includes dividends received by shareholders from corporations. Sec. 301(c)(1) and sec. 61(a)(7). When a shareholder or his family is permitted to use corporate property for personal purposes, the fair rental value of the property is includable in his or her income as a constructive dividend to the extent of the corporation's earnings and profits. Commissioner v. Riss, 374 F.2d 161, 166-167, 170 (8th Cir. 1967), affg. T.C. Memo 1964-190; Melvin v. Commissioner, 88 T.C. 63, 80-81 (1987), affd. 894 F.2d 1072 (9th Cir. 1990); Falsetti v. Commissioner, 85 T.C. 332, 356 (1985). Neither Professor Bowl nor Mr. McGee maintained logs documenting Mr. McGee's use of corporate automobiles during 1982, 1983, and 1984. At trial and on brief, Mr. McGee argued that he did not personally use any corporate automobiles in 1982, and personally used them in 1983 and 1984 less than respondent determined. Respondent stands by his determinations. Notices of deficiencies are presumed correct. Petitioners *660 have the burden to overcome this presumption. Rule 142(a). After considering the evidence presented herein, we hold that petitioners have not provided sufficient evidence to rebut respondent's determinations on this issue. It is clear that Mr. McGee had personal use of the automobiles in 1982, 1983, and 1984, and that such use was in the amounts determined by respondent. The McGees' evidence on this issue is simply too vague and incomplete. In addition, the McGees have neither offered evidence of the fair rental value of the vehicles, [10] see Commissioner v. Riss, supra, nor have met their burden of proving that Professor Bowl lacked sufficient earnings and profits to cover the amounts in question. Accordingly, we sustain respondent's determinations on this issue. *661 Issue Four: Section 6651(a)(1) Additions To Tax
The fourth issue is whether petitioners are liable for the additions to tax for late filing pursuant to section 6651(a)(1) for 1984. For the reasons stated below, we hold that they are liable. Petitioners and respondent agree that Mr. and Mrs. McGee and Professor Bowl delinquently filed their 1984 income tax returns. The only dispute is whether or not petitioners had reasonable cause for such late filing. Section 6651(a)(1) imposes an addition to tax for failure to timely file a return (determined with regard to any extension of time for filing) unless such failure is due to reasonable cause and is not due to willful neglect. The term "willful neglect" means a conscious, intentional or reckless indifference. United States v. Boyle, 469 U.S. 241, 83 L. Ed. 2d 622, 105 S. Ct. 687 (1985). The regulations define "reasonable cause" sufficient to excuse the failure to file a return as the exercise of "ordinary business care and prudence." Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Whether the late filing of an income tax return is due to a reasonable cause or willful neglect is a question of fact. Commissioner v. Walker, 326 F.2d 261, 264 (9th Cir. 1964), *662 affg. on this issue 37 T.C. 962 (1962). Petitioners argue that they delayed filing their 1984 income tax returns because respondent's agent handling their cases told them and their accountant not to file the returns until the 1982 and 1983 returns were audited because adjustments in those returns could affect the 1984 returns. Respondent claims that his agent did not advise petitioners to delay filing their 1984 returns. However, both parties agree that at a meeting in the summer of 1986, the agent's group manager informed petitioners that they should immediately file their 1984 returns, but they did not do so until a year later (July 1987). Mr. McGee and his accountant, Winfred C. Mullen, testified that the 1984 returns were completed in draft form in the spring of 1985 and were ready to be filed at that time. A taxpayer may be excused from the addition to tax for late filing of a tax return where he relies on the advice of a competent tax attorney or tax accountant. United States v. Boyle, supra. A revenue agent acting within the scope of his authority is also deemed to be a tax expert. Hugh Smith, Inc. v. Commissioner, 8 T.C. 660 (1947). *663 However, in general, respondent is not bound by the erroneous advice of his revenue agents. See United States v. Stewart, 311 U.S. 60, 85 L. Ed. 40, 61 S. Ct. 102 (1940); Bornstein v. United States, 170 Ct. Cl. 576, 345 F.2d 558 (1965); Wilkinson v. United States, 157 Ct. Cl. 847, 304 F.2d 469 (1962); Brown v. Commissioner, T.C. Memo 1989-89. Mr. McGee is a college professor and a successful businessman. The McGees and Professor Bowl had engaged an accountant for some time, who was well aware of the procedure for requesting extensions of time to file returns. It is difficult for us to believe that petitioners delayed filing their 1984 returns merely because a revenue agent suggested that they do so in view of the possibility that their 1982 and 1983 tax liabilities might affect their 1984 tax liabilities. But even if we assume that petitioners justifiably relied on the agent's statement to delay filing the 1984 returns, Hugh Smith, Inc. v. Commissioner, supra, they should have immediately filed such returns in the summer of 1986 when they were told to do so by the agent's group *664 manager. Clearly, there was no reasonable cause to delay filing the returns for another year, to July 1987, particularly since the 1984 returns were drafted sufficiently early to be timely filed. Accordingly, we conclude that petitioners are liable for the additions to tax pursuant to section 6651(a)(1) for 1984. Issue Five: Section 6653(a)(1) and (2) Additions To Tax
The fifth issue is whether the McGees are liable for additions to tax under section 6653(a)(1) and (2) for 1982, 1983, and 1984, and whether Professor Bowl is liable for such additions for 1982 and 1984. Respondent argues that the McGees negligently failed to report: (1) The receipt of substantial amounts of income from Professor Bowl; (2) constructive dividends received in the form of substantial use of corporate automobiles; and (3) director's fees paid by Southway Corporation to Mr. McGee. The McGees have conceded that they failed to report the director's fees but contest the imposition of the addition to tax with regard to that amount. With regard to Professor Bowl, respondent argues that the corporation was negligent because it incorrectly computed its 1982 and 1984 income and expenses, based on inadequately *665 maintained books and records including omission of the Prize Fund as a corporate asset, and failing to properly record personal use of corporate automobiles by corporate officers. Professor Bowl disputes such arguments. Section 6653(a)(1) imposes an addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. In view of the fact that the McGees failed to report director's fees from Southway Corporation and constructive dividend income received for use of the corporate automobiles, part of the underpayment of tax is due to negligence. Thus, we sustain respondent's determination with respect to the section 6653(a)(1) additions to tax for the McGees. Further, since Professor Bowl did not properly record the personal use of its automobiles, part of its underpayment is also due to negligence. Thus, we sustain respondent's determination with regard to the section 6653(a)(1) additions to tax for Professor Bowl. Section 6653(a)(2) imposes an additional amount, but only with respect to the portion of the underpayment attributable to the negligence. Negligence is the lack of due care or failure to do what a reasonable *666 and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners bear the burden of proving that they are not liable for the additions to tax. Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). Since we have found Mr. McGee received loans from Professor Bowl, it was not necessary for the McGees to report such loans on their income tax returns. Other than failing to report the constructive dividend income received for use of corporate automobiles and the director's fees from Southway Corporation, we think Mr. and Mrs. McGee acted as reasonable and prudent people would act under the circumstances. Consequently, we conclude that they are not liable for the section 6653(a)(2) additions to tax, except to the extent that the underpayments are attributable to their unreported use of corporate automobiles and the director's fees. Further, since we have found that Professor Bowl's books and records were in fact adequate and that the Prize Fund was not a corporate asset, we conclude that Professor Bowl was, in general, not negligent in reporting its income and deductions. As with the *667 McGees, we do not sustain the section 6653(a)(2) additions to tax with respect to Professor Bowl, except to the extent that the deficiencies are attributable to its failure to properly record personal use of its automobiles. Issue Six: Section 6661 Additions To Tax
The final issue is whether petitioners are liable for the additions to tax pursuant to section 6661 for 1982. Section 6661(a) provides for an addition to tax if there is a substantial understatement of income tax. The amount of the section 6661 addition to tax for additions assessed after October 21, 1986, is equal to 25 percent of the amount of any underpayment attributable to the substantial understatement. Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951; Pallottini v. Commissioner, 90 T.C. 498, 501-502 (1988). In the case of an individual, an understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). In the case of a corporation, an understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 10,000. *668 Sec. 6661(b)(1)(B). The understatement is reduced if it is based on substantial authority or is adequately disclosed on the return or in a statement attached to the return. Sec. 6661(b)(2)(B). Petitioners' understatements were neither based on substantial authority nor adequately disclosed on the return or in a statement attached to the return. Pursuant to the notices of deficiencies, the tax required to be shown on Mr. and Mrs. McGee's 1982 income tax return is $ 27,454, and the tax required to be shown on Professor Bowl's 1982 income tax return is $ 39,688. The McGee's return showed a refund of $ 1,358, and Professor Bowl's return showed a tax of $ 301.64. However, in view of our conclusions on the disputed issues and the concessions of the parties, Rule 155 computations will be necessary to determine whether there were substantial understatements of income tax by the McGees and Professor Bowl for 1982 within the parameters of section 6661. To reflect our conclusions on the disputed issues and the parties' concessions, Decisions will be entered under Rule 155. Footnotes
1. Unless indicated otherwise, all references herein to "petitioners" will collectively refer to petitioners Newman E. and Bonnie C. McGee and petitioner Professor Bowl, Inc. ↩
2. Unless indicated otherwise, all section references are to the Internal Revenue Code as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
*. 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations.↩
3. Sec. 6501(a) provides as follows: SEC. 6501(a). GENERAL RULE. -- Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.↩
4. Sec. 6501(c)(4) provides as follows: (4) EXTENSION BY AGREEMENT. -- Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.↩
5. Petitioners were under no duress to sign the waivers. Cf. Robertson v. Commissioner, T.C. Memo 1973-205↩ (taxpayers, who had never previously dealt with the IRS, signed consents under threat of seizure of their property and without the opportunity to consult with their attorney).
6. Other conditions that we have stated must be satisfied are as follows: (1) "the error must be in a statement of fact and not in an opinion or a statement of law", Estate of Emerson v. Commissioner, 67 T.C. 612, 618 (1977); (2) "the person claiming the benefits of estoppel must be ignorant of the true facts", Estate of Emerson v. Commissioner, supra; (3) the person claiming the benefits of estoppel must reasonably rely on the acts or statements of the one against whom estoppel is claimed, Hudock v. Commissioner, 65 T.C. 351, 363 (1975); and (4) the person claiming the benefits of estoppel "must be adversely affected by the acts or statements of the * * * [one] against whom estoppel is claimed", Estate of Emerson v. Commissioner, supra↩.
7. Respondent argues that Professor Bowl's records for 1982, 1983, and 1984 were inadequate. As a result, he used a net worth reconstruction to recalculate its taxable income for those years. The parties have reached agreements with regard to a majority of balances in Professor Bowl's records, other than the "Loans to Shareholder" and "Advances" accounts. Based on our findings herein, we agree with petitioners' characterization of the Loans to Shareholder account. We further agree with petitioners that Professor Bowl did not have any income arising from an accounting adjustment write-off to the Advances account. Finally, as previously stated, we find that the "Prize Fund" was not a corporate asset of Professor Bowl and thus agree with petitioners that it should not be included among Professor Bowl's assets.↩
8. The only exceptions are as follows: (1) The $ 31,387 Mr. McGee received from Professor Bowl during 1984 and reported as consulting fees on his 1984 return will be treated as reported, and are not to be reclassified as loans from the corporation; and (2) with regard to the funds taken from "The Professor Bowl Advertising Account," we hold that Mr. McGee used such funds for legitimate corporate business expenses, and, accordingly, they were not loans.↩
9. Repayment before a tax audit is, of course, more persuasive evidence of the existence of a debt than repayment after such an audit has commenced. Dalton v. Commissioner, T.C. Memo 1957-20; Williams v. Commissioner, T.C. Memo 1955-325↩. While the facts indicate that all the loans were repaid by 1986, the record is unclear as to whether they were in fact repaid by March 11, 1985, the time the examination of the McGees' 1982 and 1983 tax returns began. However, it appears that most of the loans were repaid by such date.
10. Mr. and Mrs. McGee argue that sec. 1.61-21(e), Income Tax Regs.↩, which values the use of a corporate vehicle by applying a standard mileage rate for a particular year, should be applied herein rather than the fair rental value of the vehicle. However, such regulation was not in effect during the years in issue.